*Formatted for Electronic Distribution* *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
01/08/2025

IN RE: )
)
**LORENZO P. QUESNEL, JR.** )
**and AMY L. QUESNEL,** ) Case No. 22-10167
) Chapter 12
Debtors. )

*Appearances:*

| | |
|---|---|
| *Rebecca A. Rice, Esq.* | *David H. Ealy, Esq.* |
| *Cohen & Rice, P.C.* | *Cristo Law Group, LLC* |
| *Shrewsbury, Vermont* | *Spencerport, New York* |
| *For the Debtors* | *Special Counsel For the Debtors* |
| | |
| *Jan M. Sensenich, Esq.* | *Antonin Robbason, Esq.* |
| *Norwich, Vermont* | *Ryan, Smith & Carbine, Ltd.* |
| *Chapter 12 Trustee* | *Rutland, Vermont* |
| | *For Bourdeau Brothers* |
| *Jocelyn L. Brown, Esq.* | |
| *Assistant U.S. Attorney* | |
| *Burlington, Vermont* | |
| *For Internal Revenue Service* | |

### MEMORANDUM OF DECISION DENYING MOTION TO CLARIFY, ALTER OR AMEND

The Court considers the United States' Motion to Clarify or Alter or Amend, Pursuant to Bankruptcy Rule 9023, the Order Dismissing Chapter 12 Case (Doc. 236) Regarding Enforcement of Order Approving Sale of Property (Doc. 210) on November 26, 2024 (the "Motion"),[1] and the responses thereto.[2] The Internal Revenue Service (IRS) filed the Motion shortly after Debtors moved to dismiss the

---

[1] ECF 239.

[2] Affirmation in Opposition to Motion of United States of America to Alter or Amend Ordre, ECF 243; Debtors' Memorandum of Law in Opposition to Motion of United States of America to Alter or Amend Order Dismissing Chapter 12 Case, ECF 244; Reply to Debtors' Opposition (Docs. 243, 244) to U.S. Motion to Clarify or Alter or Amend, Pursuant to Bankruptcy Rule 9023, the Order Dismissing Chapter 12 Case (Doc. 236) Regarding Enforcement of Order Approving Sale of Property (Doc. 210), ECF 245.

1

above-captioned case,[3] and the Court granted dismissal.[4] The Motion asks the Court to either clarify or amend its order dismissing the case to provide certain provisions of the Sale Order entered in July 2024[5] will be upheld, notwithstanding dismissal. For the reasons articulated below, the Court denies the relief requested.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court determines this contested matter constitutes a core proceeding according to 28 U.S.C. § 157 (b)(2)(N) and (O), over which this Court has constitutional authority to enter a final judgment.

## BACKGROUND

Debtors filed their first amended plan in December 2023[6] and subsequently moved to sell certain real property in January 2024.[7] Their first amended plan and the motion to sell elicited several objections and responses,[8] resulting in multiple hearings, months of conferencing and continued negotiations among the parties. Although multiple proposed chapter 12 plans were filed, none were ever confirmed during the pendency of the case. However, the parties did reach an agreement with respect to the sale motion, and in

---

[3] Ex Parte Motion to Dismiss Case Pursuant to 11 U.S.C. Section 1208(b), ECF 235.

[4] Order Dismissing Chapter 12 Case, ECF 236.

[5] *See* Order Approving Sale of Property Pursuant to 11 U.S.C. § 1206 and VT. LBR. 6004-1, ECF 210.

[6] Amended Chapter 12 Plan Dated December 21, 2023, ECF 76.

[7] Motion to Sell Pursuant to 11 U.S.C. § 1206 VT. LBR 6004-1, ECF 93.

[8] *See e.g.*, United States Trustee's Objection to Confirmation of Debtors' Amended Chapter 12 Plan Dated December 21, 2023, ECF 98; Objection of Creditor Phoenix Feeds and Nutrition to Debtors' Amended Chapter 12 Plan, ECF 99; Objection of Creditor Phoenix Feeds and Nutrition to Debtors' Motion to Sell, ECF 100; Response of AG Venture Financial Services to Amended Chapter 13 Plan (Doc. #76) and Motion to Sell Real Estate (Doc. #93), ECF 101; United States Trustee's Objection to Debtors' Motion to Sell Pursuant to 11 U.S.C. § 1206 VT. LBR 6004-1, ECF 102; Limited Objection Of Carolina Eastern-Vail, Inc. to the Confirmation of the Amended Chapter 12 Plan Dated December 21, 2023, ECF 103; Objection of the Internal Revenue Service to Debtors' Amended Chapter 12 Plan, ECF 104; Objection of The Internal Revenue Service to Debtors' Motion to Sell Pursuant to 11 U.S.C. § 1206 and VT. LBR 6004-1, ECF 105; Objection of United States Department of Agriculture to Debtors' Amended Chapter 12 Plan, ECF 106; Objection of United States Department of Agriculture to Debtors' Motion to Sell Pursuant to 11 U.S.C. § 1206 and VT. LBR 6004-1, ECF 107; United States Trustee's Amended Objection to Confirmation of Debtors' Amended Chapter 12 Plan Dated December 21, 2023, ECF 108.

July 2024 the Court entered the Sale Order.[9]

The Sale Order approved the sale of certain real property, outlined the sale terms and detailed the payment of sale proceeds to creditors.[10] Relevant here, the Sale Order provided the IRS' claims would be paid in full from proceeds of the sale,[11] and contemplated any forthcoming proposed plan shall provide for payment of future capital gains taxes owed to the IRS from sale of the real property.[12] Specifically, the Sale Order states "tax obligations due to the United States arising from the sale of the Properties shall be paid in full by the Debtors by the date when such amounts would come due in the absence of any bankruptcy" and "*any plan* proposed by the Debtors shall provide for the payment of *such* obligation […]."[13] The Sale Order continues:

> *Further*, so as to ensure that the Debtors have the funds necessary to satisfy *such* obligations, the Debtors are hereby ordered to hold and preserve, and not to dissipate or impair in any way, those funds held by Dairy Farmers of America totaling $325,000 and listed at Item 21 of the Debtors' amended Schedule A/B [DE 29, Dated February 2, 2023], subject to further order of this Court.[14]

On or around November 1, 2024, the sale closed and the IRS received $366,407.71 owed on its prepetition liens.[15] Approximately one week later, Debtors filed an Ex Parte Motion requesting dismissal of their case.[16] The Court granted the request and entered an order dismissing the case, citing Debtors'

---

[9] *See* Order Approving Sale of Property Pursuant to 11 U.S.C. § 1206 and VT. LBR. 6004-1, ECF 210. Later, the Court entered an Order Approving Stipulation Motion to Amend Order Approving Sale of Property, ECF 232. The substance of the modifications is not relevant here and need not be addressed.

[10] *Id*.

[11] *Id.* at ¶ 6(H) ("in full and final satisfaction of the IRS's prepetition secured claims against the Debtors and the estate").

[12] *Id.* at ¶ 15.

[13] *Id.* at ¶ 15 [emphasis added].

[14] *Id.* at ¶ 15 [emphasis added].

[15] United States' Motion to Clarify or Alter or Amend, Pursuant to Bankruptcy Rule 9023, the Order Dismissing Chapter 12 Case (Doc. 236) Regarding Enforcement of Order Approving Sale of Property (Doc. 210), ECF 239, ¶ 4.

[16] Ex Parte Motion to Dismiss Case Pursuant to 11 U.S.C. Section 1208(b), ECF 235

3

absolute right to dismiss under 11 U.S.C. § 1208(b).[17] Following dismissal, property of the estate revested in the Debtors and the chapter 12 trustee refunded the proceeds leftover from the sale (less administrative expenses) totaling $471,986.59.[18]

Shortly after dismissal, the IRS filed the Motion. Generally, the Motion asks the Court to find certain provisions detailed in the Sale Order remain enforceable, notwithstanding dismissal of the bankruptcy case.[19] More specifically, the Motion asks the Court to find Debtors shall remain under Court order to timely pay any income tax attributable to gain realized on the sale, and Debtors must also hold and preserve, and not dissipate in any way, the $325,000 aside until the tax is paid.[20] Although Debtors are required by law to timely pay the taxes whether in bankruptcy or not, the Motion suggests the IRS is entitled to additional assurance of payment when it comes due, even outside of bankruptcy. The Motion does not cite to any specific evidence that Debtors cannot or will not pay the taxes when due, yet the IRS expresses concern that because Debtors have previously not paid their taxes on time that they will not timely pay the income tax attributable to gain realized on the sale in a timely manner.[21] Additionally, because the taxes are not yet due, the amount requested to be set aside may or may not provide the IRS the assurance it seeks.

Debtors opposed the Motion, arguing the Court does not have jurisdiction to effectuate the IRS' request because the bankruptcy case was dismissed and no justification exists for the Court to retain jurisdiction.[22] In their opposition, Debtors note dismissal did not vacate the Sale Order and the IRS

---

[17] Order Dismissing Chapter 12 Case, ECF 236.

[18] Chapter 12 Standing Trustee's Final Report and Account, ECF 241.

[19] *See* United States' Motion to Clarify or Alter or Amend, Pursuant to Bankruptcy Rule 9023, the Order Dismissing Chapter 12 Case (Doc. 236) Regarding Enforcement of Order Approving Sale of Property (Doc. 210), ECF 239.

[20] *Id.*

[21] *Id.* at ¶ 12.

[22] *See* Affirmation in Opposition to Motion of United States of America to Alter or Amend Order, ECF 243 *and* Debtors' Memorandum of Law in Opposition to Motion of United States of America to Alter or Amend Order Dismissing Chapter 12 Case, ECF 244.

4

received full payment of its claims, meaning it is not in any worse position than if the property was sold outside of bankruptcy.[23] Further, Debtors stated they have sufficient funds to pay the taxes in the future and allege they already made a payment to the IRS in the amount of $100,000 as a quarterly estimate of the capital gains tax that will be due.[24]

The IRS replied to Debtors' opposition including additional argument.[25] The reply argues the Sale Order remains only partially consummated,[26] and maintains the additional assurance is a right the IRS acquired in reliance of the Sale Order – claiming the language was the result of extensive negotiations and the IRS would not have agreed to the Sale Order without it.[27] However, the reply offers no evidence to support this.

On December 20, 2024, the Court conducted a hearing on the Motion at which all parties appeared and were heard. At the hearing the IRS continued to argue the language providing for additional assurance in the Sale Order was material to its decision to agree to the sale. All the same, the IRS did not offer any actual evidence of such negotiations or discussions to support this claim. When asked if it would like an opportunity to produce such evidence at a further evidentiary hearing, the IRS declined. Following the hearing, the Court took the matter under advisement.

## DISCUSSION

It is well established that bankruptcy courts retain jurisdiction after a case has been dismissed or closed to interpret or enforce previously entered orders.[28] Therefore, it follows the Court has authority to

---

[23] *See* Affirmation in Opposition to Motion of United States of America to Alter or Amend Order, ECF 243.

[24] *Id.* at ¶ 11 and Exhibit B.

[25] Reply to Debtors' Opposition (Docs. 243, 244) to U.S. Motion to Clarify or Alter or Amend, Pursuant to Bankruptcy Rule 9023, the Order Dismissing Chapter 12 Case (Doc. 236) Regarding Enforcement of Order Approving Sale of Property (Doc. 210), ECF 245.

[26] *Id.* at ¶ 7.

[27] *Id.* at ¶¶ 5-6. Because the IRS prepetition secured claims were satisfied in full upon closing, the record is undeveloped on what rights the IRS compromised by consenting to the Sale Order.

[28] *In re Williams*, 256 B.R. 885, 892 (8th Cir. BAP 2001); *see also, In re Menk*, 241 B.R. 896, 906 (B.A.P. 9th Cir. 1999) ("The bankruptcy court retains subject-matter jurisdiction to interpret orders entered prior to dismissal."); *In re Chateaugay Corp.*,

5

interpret and enforce its orders insomuch as they affect the parties' rights and liabilities.[29] Moreover, even after dismissal, bankruptcy courts are empowered to protect rights parties have acquired in reliance of a bankruptcy case.[30] However, in order to exercise this authority the Court must first determine a right was actually acquired in reliance of the case. Here, the IRS fails to establish the relief it seeks is pursuant to a right it acquired in reliance of the bankruptcy case. Consequently, the Court must deny the Motion.

Because the relief requested is two-fold, the Court will discuss each request in turn. First, the IRS requests the Court order Debtors to pay in full any upcoming capital gains tax on the sale. While the Court acknowledges the IRS has a right to timely payment of the taxes, this right was clearly not acquired in reliance of the bankruptcy case. The IRS is already entitled to payment of the capital gains taxes as a matter of law and has every right to seek relief outside of bankruptcy since the case has been dismissed. Therefore, the Court is not empowered to enforce this right. Alternatively (and just like with any other taxpayers), the IRS is free to seek all applicable relief against Debtors outside of bankruptcy.

Second, the IRS requests the Court order Debtors to hold $325,000 separate until the capital gains taxes come due. In contrast to its right to payment, the IRS is not already entitled to such additional assurance by law. It follows that this provision could possibly be a right acquired in reliance of the bankruptcy. Yet the IRS merely states this as a conclusive fact and fails to offer any evidence (beyond the language of the Sale Order) to illustrate how it acquired this right. The IRS is correct that the Sale Order directs funds to be held separately in anticipation of payment of the capital gains tax, but when read within the context of the paragraph, such direction appears related to the anticipated filing of a future proposed

---

201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), aff'd in part, 213 B.R. 633 (S.D.N.Y. 1997) ("Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334."); *In re Fibermark, Inc.*, 369 B.R. 761 (Bankr. D. Vt. 2007).

[29] Additionally, with respect to the Sale Order, the Court expressly retained jurisdiction to resolve any disputes among the parties arising thereunder, which this instant dispute does.

[30] *In re Caldwell*, 1988 WL 120650, *3 (N.D. Ill. Oct. 31, 1988) (Citing the legislative history of 11 U.S.C. §349 – H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 338 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 48 (1978); U.S.Code & Admin.News 1978, p 5787.).

6

chapter 12 bankruptcy plan. Because no further plan was ever filed or confirmed and the case was subsequently dismissed, the provision is moot.

Moreover, even if the Court were to take the language out of context, it alone does not support a finding that the IRS acquired the right in reliance of the bankruptcy case. Although the IRS later argued it would not have agreed to the sale if not for inclusion of the language, it has not pointed to anything in the record or presented any evidence to support its position. Nothing in the Sale Order or prior objections clearly indicate the IRS required such a provision or the risk of future non-payment was a material concern. If any evidence of such conversations or negotiations regarding the provision exist, they were not provided to the Court and were therefore not considered.

The Court considers it significant that the Sale Order provided for the IRS' claims to be paid in full – meaning its interests were not impaired. While this is certainly not outcome determinative, it goes against the IRS suggestion the language was bargained for and factors into the Court's overall determination. The Court is sympathetic to the fact that additional assurance is something the IRS would like to have, but it cannot be considered a right acquired in reliance of the bankruptcy without further evidence of negotiations.

Relatedly, there also has been no showing of malicious intent or bad faith on behalf of the Debtors. Bankruptcy courts have exercised jurisdiction after dismissal in instances when doing so is required to right a wrong – meaning evidence of bad faith would be an important consideration.[31] While there were certainly disagreements throughout the case, more is needed to warrant Court intervention. There has been no evidence presented that Debtors are unable or unwilling to pay the taxes when due, and Debtors submitted evidence of a partial payment of $100,000 toward the taxes. Moreover, although the IRS appears

---

[31] *See generally*, *In re Jim Slemons Hawaii, Inc.*, 542 F. App'x. 656 (9th Cir. 2013); *In re Jim Slemons Hawaii, Inc.*, No. BAP HI-10-1284, 2011 WL 6934459 (B.A.P. 9th Cir. Oct. 12, 2011), aff'd in part, dismissed in part, 542 F. App'x 656 (9th Cir. 2013) (Gives factual background for later 9th Cir. decision.); *In re Vela*, 2009 WL 6506881, (8th Cir. BAP, Sept. 15, 2009); *In re Caldwell*, 1988 WL 120650 (N.D. Ill. Oct. 31, 1988).

to infer bad faith from Debtors' failure to timely pay their taxes in the past, the Court cannot take this into consideration. If the Court were to equate late or non-payment of prior taxes with bad faith, almost every debtor would be subject to this finding.

## CONCLUSION

For the reasons set forth above, the Court finds that although it has authority to interpret and enforce its prior orders even after dismissal, the IRS failed to establish such action is warranted under the facts and circumstances of this case. Therefore, the Motion is DENIED. This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

January 8, 2025  
Burlington, Vermont

*Heather Z. Cooper*  
Heather Z. Cooper  
United States Bankruptcy Judge