UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 SEP 29 PM 12: 59

CLERK

BY Uhw
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case No. 2:25-cv-00088-cr |
| ) | |
| LORENZO P. QUESNEL, JR., and ) | |
| AMY L. QUESNEL, ) | |
| ) | |
| Appellees. ) | |

## OPINION AND ORDER
## AFFIRMING IN PART THE BANKRUPTCY COURT'S JANUARY 8, 2025 ORDER DENYING APPELLANT'S MOTION TO CLARIFY, ALTER, OR AMEND
(Doc. 1-4)

In this appeal, the United States, on behalf of the Internal Revenue Service ("IRS"),[1] appeals a January 8, 2025, order issued by the United States Bankruptcy Court for the District of Vermont ("Bankruptcy Court"), Case No. 22-10167. On December 6, 2022, Lorenzo P. Quesnel, Jr., and Amy L. Quesnel ("Debtors"), filed a voluntary petition for relief pursuant to Chapter 12 of the Bankruptcy Code. On July 18, 2024, the Bankruptcy Court issued an Order Approving Sale of Property Pursuant to 11 U.S.C. § 1206 and Vt. LBR 6004-1 (the "Sale Order"). On November 8, 2024, the Debtors filed an ex parte motion to dismiss their case pursuant to 11 U.S.C. § 1208(b). The Bankruptcy Court granted the motion and dismissed the case on November 12, 2024 (the "Dismissal Order").

---

[1] The United States Department of Agriculture ("USDA") was originally a party to the bankruptcy case, but it does not appeal.

On November 26, 2024, the IRS filed a motion to clarify, alter, or amend the Dismissal Order to provide that the Sale Order remained enforceable, Dkt. 239. The Bankruptcy Court issued an order denying the motion to clarify, alter, or amend, Dkt. 249, and the IRS appeals that order. (Doc. 1.)

In this appeal, the IRS seeks enforcement of the provisions contained in Paragraph 15 of the Sale Order or, alternatively, requests reversal of the Final Order and Decision, withdrawal of the reference pursuant to 28 U.S.C. § 157(d), and issuance of an order enforcing the Sale Order.

The IRS frames the issues on appeal as follows:

1. Did the Bankruptcy Court err in concluding that the Sale Order's unfulfilled provisions were rendered unenforceable by the Dismissal Order's silence on the matter?

2. If the Sale Order's provisions were not rendered unenforceable by the Dismissal Order, did the Bankruptcy Court in effect amend the Dismissal Order to vacate the Sale Order or render the subject provisions of the Sale Order unenforceable and, if so, did it err in so doing?

3. If the Dismissal Order initially vacated the Sale Order or rendered the subject provisions unenforceable, did the Bankruptcy Court err in refusing to amend it to preserve the enforceability of the subject terms of the Sale Order?

(Doc. 10 at 8-9.)

The IRS filed its brief on May 20, 2025. (Doc. 10.) The Debtors responded on June 20, 2025, (Doc. 11), and the IRS replied on July 3, 2025, (Doc. 12), at which point the court took the matter under advisement.

The IRS is represented by Assistant United States Attorney Jocelyn L. Brown. David H. Ealy, Esq., and Rebecca A. Rice, Esq., represent the Debtors.

I.  **Factual and Procedural Background.**

On December 6, 2022, the Debtors filed a voluntary petition for relief pursuant to Chapter 12 of the Bankruptcy Code,[2] as well as a motion to sell development rights. On

---

[2] "In 1986, Congress enacted Chapter 12 of the Bankruptcy Code, § 1201 *et seq.*, to allow farmer debtors with regular annual income to adjust their debts." *Hall v. United States*, 566 U.S. 506,

2

December 15, 2022, the IRS filed its proof of claim in the amount of $321,925.98, comprised of a secured claim in the amount of $318,763.38 and a general unsecured claim in the amount of $3,162.60. These amounts arose from the Debtors' failure to pay federal income, payroll, and unemployment taxes at various times between 2011 and 2017.

On December 27, 2022, the IRS filed a response to the Debtors' motion to sell, wherein it challenged the Debtors' motion and their eligibility for relief under Chapter 12. Thereafter, on February 23, 2023, the Bankruptcy Court entered an order approving the sale of development rights for $650,000.00. That amount "included a reservation of rights as to any issues raised by either the United States (on behalf of the IRS and/or USDA) or the United States Trustee's Office." (Doc. 10 at 11.) (citation omitted). "For the next year and a half, those same [objections] that were raised by the [IRS] continued to be a point of contention whenever the Debtors sought to confirm a new plan culminating with the negotiations over the Sale Order." *Id.*

The Debtors filed an initial Chapter 12 plan for which they did not seek confirmation. On December 21, 2023, they filed an Amended Chapter 12 plan. A few weeks later, on January 5, 2024, the Debtors filed a motion to sell pursuant to 11 U.S.C. § 1206 and Vt. LBR 6004-1 (the "Sale Motion"), wherein they proposed to sell a portion of their land and outbuildings to their daughter and son-in-law, Kylie and Jeremy Chittenden (the "Chittendens"), with the proceeds of the sale to be distributed to the Chittendens and other bankruptcy creditors. The Bankruptcy Court properly recognized that the Chittendens are "insiders relative to the [Debtors]." (Doc. 2-18 at 1.) On February 8, 2024, the IRS filed its objections to the Debtors' Amended Chapter 12 plan and the Sale Motion. Therein, the IRS reaffirmed its prior objections, challenging the Debtors' eligibility for relief under Chapter 12 and claiming that the Debtors had

---

509 (2012). Chapter 12 "permits individual debtors with regular annual income to preserve existing assets subject to a 'court-approved plan under which they pay creditors out of their future income.'" *Id.* (quoting *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010)).

3

untimely submitted multiple versions of their federal income tax returns for tax years 2019 through 2022.

The Debtors filed a Second Amended Chapter 12 plan on March 15, 2024. Five days later, they filed a supplement to the Second Amended Plan. The IRS objected to the confirmation of the Second Amended Plan on April 12, 2024, and on May 20, 2024, the Debtors filed a supplement to the Sale Motion as well as a Third Amended Chapter 12 plan.

On June 7, 2024, among other objections lodged by other parties, the IRS objected to the confirmation of the Third Amended Plan and the Sale Motion, in part due to its concerns that the Debtors' late-filed tax returns, which were under IRS audit, might be inaccurate and concerns that the capital gains taxes due from the sale, which the Debtors estimated would total $367,963, might go unpaid.

One week later, on June 14, 2024, the Debtors filed a Fourth Amended Chapter 12 plan. The Bankruptcy Court held a hearing on June 21, 2014 (the "June 21 hearing"), during which it addressed the Debtors' Fourth Amended Chapter 12 plan and the Sale Motion and set those matters for an evidentiary hearing on July 19, 2024.

After the June 21 hearing, all creditors and parties-in-interest, including the IRS, the USDA, and the Debtors, engaged in settlement discussions. As a result of the parties' negotiations, on July 17, 2024, on behalf of the parties, the Chittendens filed a proposed order approving the sale of property pursuant to § 1206 and Vt. LBR 6004-1 (the "proposed Sale Order"). In presenting the proposed Sale Order to the Bankruptcy Court, the Chittendens advised that although "there's support for [the] sale upon the terms that are reflected in the [proposed] [S]ale [O]rder[,]" (Doc. 10 at 15) (quoting Doc. 2-32 at 9:15-17), "there's a reticence about proceeding with a plan, with a planned confirmation[.]" *Id.* (quoting Doc. 2-32 at 9:14-15). On July 18, 2024, the Bankruptcy Court issued an order approving the proposed Sale Order.[3]

---

[3] Neither the parties to this appeal nor the Bankruptcy Court indicate whether the Bankruptcy Court made modifications to the proposed Sale Order. The court's review of the two documents

4

In relevant part, the Sale Order states:

> The Court specifically notes that various creditors and parties-in-interest have previously filed objections to the relief sought by the Sale Motion. This Order is the product of negotiations between the Debtors, the Purchasers, and those parties who previously filed objections to the relief sought by the Sale Motion and is therefore being entered with the consent of such parties subject to the terms delineated within this Order. As such, all objections to the sale contemplated by the Sale Motion, as modified by this Order, not previously withdrawn are overruled to the extent that the sale approved by this Order occurs by the time set within this Order, and all parties who have consented to entry of this Order have also similarly consented to entry of an order, of near or even date hereof, approving the lease of the so-called Cornwall Farm by the Debtors to the Purchasers.

(Doc. 2-18 at 2.)

The Sale Order states that all participants, including the Debtors, acted in good faith in the negotiations:

> The Purchasers are good faith purchasers in that the Debtors, the Purchasers, and their respective counsel have engaged in extensive, good-faith, arm's length negotiations to determine the terms and conditions of the Sale and the [purchase and sale agreement and][,] the Debtors and Purchasers have entered into the [purchase and sale agreement] in good faith. Accordingly, the Purchasers, upon the closing of the sale as contemplated hereby, are entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code.

*Id.* at 11, ¶ 7.

The Sale Order also provides that the Chittendens furnished adequate consideration:

> The [purchase and sale agreement] represents a fair and reasonable offer to purchase the Properties under the circumstances of this Chapter 12 case, the consideration to be paid is fair and adequate, and the consummation of the Sale to the Purchasers is a reasonable exercise of the Debtors' business judgment.

*Id.* at 11, ¶ 8.

The Sale Order directs the Debtors to allocate the sale proceeds as follows:

---

reveals that the Bankruptcy Court made minor revisions to the proposed Sale Order which are immaterial for purposes of this appeal.

5

> At the closing of the Sale, the Debtors are authorized and directed to make the following payments from the Sale proceeds directly to the following creditors: . . . to the Department of the Treasury, [IRS], the aggregate amount of $362,906.44 [] (as of September 20, 2024), plus interest accrued thereafter at the statutory rate, in full and final satisfaction of the IRS's prepetition secured claims against the Debtors and the estate[.]

*Id.* at 8, 10, ¶ 6-H (footnotes omitted).

With regard to excess sale proceeds, the Sale Order provides:

> All remaining sale proceeds shall be turned over to the Chapter 12 Trustee *to hold pending confirmation of a Chapter 12 plan by the Debtors*, and shall be available to satisfy, among other things, trustee's fees (estimated to be $27,444.06), Debtors' counsel fees (estimated $55,000), reimbursement of Phoenix for funds advanced for appraisal costs ($5,000) and $1,000 advanced by the Chapter 12 Trustee for that same appraisal, and priority and general unsecured claims. The Chapter 12 Trustee shall be authorized to satisfy the Phoenix appraisal-related administrative expense, and to reimburse himself the $1,000 advanced by him for that appraisal, without further order of this Court.

*Id.* at 10, ¶ 6-L (emphasis supplied).

In respect to potential dismissal of the bankruptcy case, the Sale Order states: "If the Sale does not close on or before November 1, 2024, the Debtors' bankruptcy case shall be dismissed, unless otherwise agreed to by all parties who hold mortgages or liens on the Properties." *Id.* at 11, ¶ 10. "If either the Debtors and/or the Purchasers fail to make any adequate protection payment as required herein, the Court, upon request of an affected party may ex parte enter an Order dismissing the bankruptcy proceeding. (Doc. 2-18 at 12, ¶ 12.) The Sale Order is silent regarding a dismissal initiated by the Debtors.

Paragraph 15 of the Sale Order states:

> Any tax obligations due to the United States arising from the sale of the Properties shall be paid in full by the Debtors by the date when such amounts would come due in the absence of any bankruptcy but excluding any deadlines relative to the payment of estimated taxes. As such, any plan proposed by the Debtors shall provide for the payment of such obligations to the United States in full and shall, to the extent necessary to effect such payment in full, provide for a waiver of 11 U.S.C. § 1232. Further, so as to ensure that the Debtors have the funds necessary to satisfy such obligations, the Debtors are hereby ordered to hold and preserve, and not dissipate or impair in any way, those funds held by Dairy Farmers of America

[("DFA")] totaling $325,000 and listed at Item 21 of the Debtors' amended Schedule A/B [DE 29, Dated February 2, 2023], subject to further order of this Court.

*Id.* at 12-13, ¶ 15.

The Sale Order finally provides: "The Court shall retain jurisdiction over the parties with respect to this Sale Order, including any disputes arising hereunder." *Id.* at 13, ¶ 18.

The Bankruptcy Court held a hearing on July 18, 2024, during which it approved the Sale Order and denied without prejudice confirmation of the Debtors' Fourth Amended Chapter 12 plan. That same day, the Sale Order was issued.[4] The Bankruptcy Court scheduled a status conference for September 26, 2024.

Pursuant to the Sale Order, the sale of the Debtors' real estate closed on November 1, 2024. Thereafter, the IRS received a payment of $366,407.71, fully satisfying its secured pre-bankruptcy liens but not its unsecured claim. The USDA mortgage was also paid in full. One week later, on November 8, 2024, the Debtors filed an ex parte motion to dismiss the case pursuant to 11 U.S.C. § 1208(b).[5] The Bankruptcy Court entered the Dismissal Order on November 12, 2024.

On November 26, 2024, the IRS filed a motion to clarify, alter, or amend, pursuant to Bankruptcy Rule 9023, the Dismissal Order (the "Motion to Clarify"), wherein it asked the Bankruptcy Court to clarify the Dismissal Order "to confirm that the Sale Order had not been vacated and that its unfulfilled terms remained effective and [enforceable] by the Bankruptcy Court including, in particular, paragraph 15." (Doc. 10 at 16.) Alternatively, the IRS asked the Bankruptcy Court to amend the Dismissal Order to state

---

[4] On October 29, 2024, the Bankruptcy Court issued an Order Approving a Stipulated Motion to Amend the Sale Order. Those amendments are not relevant to this appeal.

[5] "On request of the debtor at any time, if the case has not been converted under section 706 or 1112 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable." 11 U.S.C. § 1208(b). The record contains no explanation as to why the filing was made on an ex parte basis. The application for dismissal cites Bankruptcy Rule 9013, which states: "Unless a written motion may be considered ex parte, the movant must, within the time prescribed by Rule 9006(d), serve the motion on [certain individuals[.]" Fed. R. Bankr. P. 9013.

7

that the Sale Order was not vacated and that the Bankruptcy Court retained jurisdiction to enforce it.

In support of its Motion to Clarify, the IRS asserted that the Debtors' submissions during the bankruptcy case suggested the capital gains on the sale of land would be at least $1,750,000, resulting in a tax of approximately $287,895. As of the filing of the Motion to Clarify, the Chapter 12 trustee had distributed to the Debtors the net proceeds of the land sale to the Chittendens, totaling $500,000. The IRS contended in its motion that the Debtors must use those proceeds to timely pay the capital gains taxes and other anticipated "significant tax deficiency assertions" that the IRS was auditing. (Doc. 2-23 at 6, ¶ 12.) In light of the Debtors' apparent intent to transfer their remaining parcel of farmland to their children, the IRS argued it "ha[d] ample reason to want the gains tax provision in the Sale Order to be enforceable." *Id.*

The Debtors opposed the IRS's motion on December 13, 2024, asserting "that they had already received and disbursed a portion of the DFA funds that they had been ordered to hold and preserve." (Doc. 10 at 19) (citation and internal quotation marks omitted). They pointed out that the capital gains tax on the land sale was not due until April 15, 2026, and they had made an estimated 2024 tax year payment of $100,000. The IRS replied on December 19, 2024, and the Bankruptcy Court heard arguments on the Motion to Clarify on December 20, 2024 (the "December 20, 2024 hearing").

At the December 20, 2024 hearing, the Bankruptcy Court afforded the IRS the opportunity to present evidence of the parties' negotiations that gave rise to the proposed Sale Order. The IRS proffered no evidence. The IRS also declined an opportunity to present such evidence at a future evidentiary hearing.

On January 8, 2025, the Bankruptcy Court entered a Final Order and Decision denying the IRS's Motion to Clarify. In its memorandum of decision, the Bankruptcy Court explained its rationale as follows:

> It is well established that bankruptcy courts retain jurisdiction after a case has been dismissed or closed to interpret or enforce previously entered orders. Therefore, it follows [that] the Court has authority to interpret and enforce its orders insomuch as they affect the parties' rights and liabilities.

8

> Moreover, even after dismissal, bankruptcy courts are empowered to protect rights parties have acquired in reliance of a bankruptcy case. However, in order to exercise this authority[,] the Court must first determine a right was actually acquired in reliance of the case.

(Doc. 1-2 at 5-6) (footnotes omitted).

The Bankruptcy Court found that the IRS failed to establish the relief it sought was "pursuant to a right it acquired in reliance of the bankruptcy case." *Id.* at 6. Addressing the Debtors' obligation to pay capital gains taxes accruing from the land sale, the Bankruptcy Court reasoned that because "[t]he IRS is already entitled to payment of the capital gains taxes as a matter of law and has every right to seek relief outside of bankruptcy[,] . . . the Court is not empowered to enforce this right." *Id.*

Turning to the request that the Debtors be required to hold $325,000 of the DFA funds until they were required to pay the capital gains taxes, the Bankruptcy Court observed:

> The IRS is correct that the Sale Order directs funds to be held separately in anticipation of payment of the capital gains tax, but when read within the context of the paragraph, such direction appears related to the anticipated filing of a future proposed chapter 12 bankruptcy plan. Because no further plan was ever filed or confirmed and the case was subsequently dismissed, the provision is moot.

*Id.* at 6-7. The Bankruptcy Court noted that:

> Although the IRS later argued it would not have agreed to the sale if not for inclusion of the language [in Paragraph 15 of the Sale Order], *it has not pointed to anything in the record or presented any evidence to support its position.* Nothing in the Sale Order or prior objections clearly indicate the IRS required such a provision or the risk of future non-payment was a material concern.

*Id.* at 7 (emphasis supplied). The Bankruptcy Court also "consider[ed] it significant that the Sale Order provided for the IRS'[s] claims to be paid in full – meaning its interests were not impaired." *Id.*[6]

---

[6] The Bankruptcy Court's observation in dicta is not wholly accurate. The IRS's unsecured claim was not paid in full.

On January 23, 2025, the IRS appealed the Bankruptcy Court's decision. On March 24, 2025, it moved for an extension of time to file its brief in light of the upcoming April 15 deadline for the filing of taxes and the possibility that the case might become moot. On May 6, 2025, this court granted the IRS's motion. (Doc. 8.) As of the filing of the IRS's brief, the Debtors had not filed their 2024 tax return nor paid the capital gains taxes other than the $100,000 estimated taxes which they paid on December 27, 2024.[7] Instead, they timely applied for an extension of time to file their 2024 tax return.

## II.  Conclusions of Law and Analysis.

### A.  Standard of Review.

28 U.S.C. § 158(a) vests district courts with "jurisdiction to hear appeals" from "final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158(a)(1). Although a bankruptcy court's findings of fact are not conclusive on appeal, "'the party that seeks to overturn them bears a heavy burden.'" *In re Lehman Bros. Holdings, Inc.*, 415 B.R. 77, 83 (S.D.N.Y. 2009) (quoting *In re Miner*, 299 B.R. 561, 565 (B.A.P. 2d Cir. 1999)). "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012) (citing Fed. R. Bankr. P. 8013).

"[T]he standard of review for a mixed question [of law and fact] all depends [] on whether answering it entails primarily legal or factual work." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018). For factual findings, "[a] finding is clearly erroneous when, on consideration of the

---

[7] The IRS explains:

> Under subsection (i) of § 6654, farmers need only make a single annual estimated payment on January 15 of the following year. Anyone applying for an extension is required to pay any estimated payment not already made. Treasury regulation (26 C.F.R.) 1.6081-4 requires that an extension application include "the full amount properly estimated as tax for the taxable year" and explains that the application "will not extend the time for payment of any tax due."

(Doc. 12 at 21) (internal citation omitted).

10

record as a whole, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Bassett v. SAC Fund II 0826, LLC*, 2025 WL 2208256, at *3 (E.D.N.Y. Aug. 4, 2025) (citations and internal quotation marks omitted).

A bankruptcy court's interpretation of the text of a plan or confirmation order are conclusions of law this court reviews de novo. *See In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000) (citing *Bellefonte Reins. Co. v. Aetna Cas. and Sur. Co.*, 903 F.2d 910, 912 (2d Cir. 1990)) ("The Bankruptcy Court's interpretation of the text of the Plan, the Confirmation Order, and the Final Decree are conclusions of law reviewed de novo."). A bankruptcy court's denial of a motion to alter its prior decision is reviewed for an abuse of discretion. *See Bassett*, 2025 WL 2208256, at *3. This standard provides:

> Motions to vacate, alter, or reconsider a bankruptcy court's decisions or findings are governed by Federal Rules of Civil Procedure 52(b), 59(e), and 60(b), which apply to adversary proceedings through Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024, respectively. A district court reviews a bankruptcy court's rulings on motions to vacate or reconsider for abuse of discretion. This means that the district court does not consider what it would have done under the same circumstances, but whether, in light of the records as a whole, the bankruptcy court's decision was reasonable. The abuse of discretion standard is a high one; it is satisfied only when the record shows that the bankruptcy court based its decision on an erroneous view of the law or clearly erroneous factual findings.

*Id.* (alteration adopted) (internal citations and quotation marks omitted).

**B.    Whether the Bankruptcy Court Abused Its Discretion in Refusing to Enforce Paragraph 15 of the Sale Order.**

**1.    Whether the Dismissal Order Vacated the Sale Order.**

The IRS argues, and the Debtors do not contest, that the Dismissal Order did not vacate the Sale Order. The court agrees. The Sale Order thus remained valid and enforceable notwithstanding the dismissal of the bankruptcy case.

In its memorandum of decision, the Bankruptcy Court opined that, although it retained jurisdiction to enforce orders post-dismissal, its ability to do so depended not on the continued validity of the Sale Order, but on whether the IRS sought to vindicate a right acquired in reliance on the bankruptcy case. The IRS contends that the Bankruptcy Court erred in reaching this conclusion because the plain language of the dismissal

11

statute, 11 U.S.C. § 349, does not impair a valid sale order. The Debtors counter that the Bankruptcy Court did not err because the Sale Order "did not include any express retention of jurisdiction to enforce [Paragraph 15] after dismissal," (Doc. 11 at 10), and enforcing Paragraph 15 would require the Bankruptcy Court to reassert jurisdiction over a case that has been dismissed without a confirmed plan to enforce.

In relevant part, 11 U.S.C. § 349 states that "[u]nless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title . . . vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title[.]" 11 U.S.C. § 349(b)(2). "The basic purpose of Section 349(b) is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." *In re Westgate Nursing Homes, Inc.*, 518 B.R. 250, 255 (W.D.N.Y. 2014) (alteration adopted) (internal quotation marks and citation omitted).

The House and Senate reports accompanying the Bankruptcy Reform Act of 1978, which included § 349, provide:

> Subsection (b) specifies that the dismissal reinstates proceedings or custodianships that were superseded by the bankruptcy case, reinstates avoided transfers, reinstates voided liens, vacates any order, judgment, or transfer ordered as a result of the avoidance of a transfer, and revests the property of the estate in the entity in which the property was vested at the commencement of the case. The court is permitted to order a different result for cause. . . . *Where there is a question over the scope of the subsection, the court will make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.*

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 338 (1977); S. Rep. No. 95-989, 95th Cong. 2d Sess. 48-49 (1978) (emphasis supplied).

The Sale Order was entered pursuant to 11 U.S.C. § 363. "[A]ny statutory analysis must always start with the clear meaning of the statute. If the meaning is clear[,] then the [c]ourt has no discretion but to follow the mandates as written by Congress." *In re Rahman*, 400 B.R. 362, 368 (E.D.N.Y. 2009) (internal quotation marks omitted). Because § 363 is not listed in § 349(b)(2), the Dismissal Order did not vacate the Sale Order,

regardless of whether a plan was confirmed. *See In re KG Winddown, LLC* ("*Winddown*"), 628 B.R. 739, 749, 749 n.8 (S.D.N.Y. 2021) (recognizing that "[w]hile section 363(m) applies only to an appeal from an order authorizing a sale, not generally to any later challenge to such an order, it embodies a strong policy of finality of bankruptcy sales," and the sale order "would survive the bankruptcy case, regardless of how the case concluded[]") (internal quotation marks and citations omitted). To the extent the Bankruptcy Court opined the Dismissal Order rendered Paragraph 15 of the Sale Order moot because no plan was confirmed and the case was dismissed, the Bankruptcy Court erred in that conclusion.[8]

    **2.**    **Whether the Bankruptcy Court Erred by Requiring the IRS to Prove It Acquired Rights in Reliance on the Bankruptcy Case as a Condition Precedent to Retaining Jurisdiction.**

The Bankruptcy Court determined that "in order to [retain jurisdiction after a case has been dismissed or closed to interpret or enforce previously entered orders] the Court must first determine a right was actually acquired in reliance of the case." (Doc. 1-2 at 6.) The IRS argues that the Bankruptcy Court erred in this determination and it need not establish that it acquired rights in reliance on the bankruptcy case in order to seek enforcement of the Sale Order because, "[u]nder 11 U.S.C. § 349(b)(2), dismissal of a Chapter 12 case only vacates orders or judgments entered pursuant to §§ 522(i)(1), 542, 550, or 553. As for other kinds of orders, simply put, bankruptcy courts retain jurisdiction after a case has been dismissed or closed to interpret or enforce previously entered orders." (Doc. 10 at 21-22) (internal quotation marks and citations omitted). Accordingly, "[n]o part of [the Sale Order] is automatically disturbed by dismissal and no exception to such a disturbance need be shown." *Id.* at 14 n.10.

The Debtors counter that the IRS was properly required to prove reliance on the bankruptcy case because the Dismissal Order revested all property of the estate in the Debtors, including the DFA funds. Thereafter, they contend the Bankruptcy Court did not

---

[8] In footnote 13 of its opening brief (Doc. 10), the IRS cites a legitimate concern raised by an unsecured creditor, Bourdeau Brothers, urging the Bankruptcy Court not to opine that it lacked authority to enforce the Sale Order due to dismissal of the case. *Id.* at 29 n.13.

13

have jurisdiction to interfere with former bankruptcy case assets "except to protect rights acquired in reliance upon the bankruptcy [case]." (Doc. 11 at 14.) The IRS responds that the DFA funds were not property of the Debtors' estate because the Debtors claimed the funds as exempt during the bankruptcy case and, as a result, the DFA funds never became part of the estate either before or after the Dismissal Order.[9] (Doc. 12 at 23.)

"[B]ankruptcy courts retain jurisdiction after a case has been dismissed or closed to interpret or enforce previously entered orders." *In re Park Ave. Garage, LLC*, 403 F. App'x 555, 556 n.2 (2d Cir. 2010) (citations omitted) (alteration in original); *see also Gulf Ins. Co. v. Glasbrenner*, 343 B.R. 47, 56 (S.D.N.Y. 2006), *aff'd sub nom. Gulf Ins. Co. v. Caldor Corp.*, 273 F. App'x 90 (2d Cir. 2008) ("This Court has not found additional authority supporting the proposition that the bankruptcy court lacks subject-matter jurisdiction to enforce or nullify orders previously entered in a now-dismissed bankruptcy case[.]"); *In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), *aff'd in part,* 213 B.R. 633 (S.D.N.Y. 1997) ("Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334.").

The court agrees with the IRS that the Bankruptcy Court erred in requiring the IRS to establish that it acquired rights in reliance on the bankruptcy case in order to seek enforcement of the Sale Order. Because the Dismissal Order did not vacate the Sale Order under § 349(b)(2), as the Sale Order was not issued pursuant to the enumerated sections thereunder, the Bankruptcy Court retained jurisdiction over the Sale Order

---

[9] While the Debtors repeatedly claimed that the DFA profit-sharing account qualified for an exemption in their Chapter 12 plans and the IRS repeatedly objected to this assertion, the Bankruptcy Court did not make a final determination as to whether the DFA funds were exempt because a plan was never confirmed. The IRS argues that "[s]ince the Debtors asserted an exemption on the DFA Funds, unless an objection to that exemption was sustained, those funds were not property of the estate." (Doc. 12 at 23.) In the December 20, 2024 hearing, however, the IRS conceded that the DFA funds were property of the estate and stated: "I well recognize the property[, referring to the DFA funds,] to the extent practical goes and revests in the Debtors, but there's already an agreement that suggests that some of that property[,] [] as a benefit to the IRS is being held . . . so that it can be assured that there is some protection that these taxes will be paid." (Doc. 2-33 at 14:19-25.)

14

without the IRS first establishing it acquired rights in reliance on the bankruptcy case. *See Glasbrenner*, 343 B.R. at 55 (citing 11 U.S.C. § 349(b)(2)) ("By its terms, section 349(b)(2) vacates only those orders entered pursuant to the enumerated sections, specifically sections 522(i)(1), 542, 550, or 553.").

Whether a bankruptcy court is always required, however, to retain jurisdiction post-dismissal over any order that has not been vacated by 11 U.S.C. § 349(b)(2) is unsettled. *See Winddown*, 628 B.R. at 748 (finding the bankruptcy court properly retained jurisdiction to enforce a sale order because the sale order contained a clear statement that the court retained jurisdiction). In the settlement context, a dismissal order must explicitly retain jurisdiction in order for a bankruptcy court to enforce its terms post-settlement. *See, e.g., In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545, 549 (9th Cir. 2006) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)) ("Where a settlement agreement led to the dismissal of a case, a court has jurisdiction to vindicate its authority or effectuate its decree if the court's dismissal order explicitly retained jurisdiction or incorporated the terms of the settlement agreement."); *In re Ionosphere Clubs, Inc.*, 262 B.R. 604, 613 (Bankr. S.D.N.Y. 2001) (finding the bankruptcy court retained jurisdiction over post-settlement disputes because the confirmation order provided that court would retain jurisdiction).

*Winddown* is instructive. There, the bankruptcy court considered the enforceability of orders issued during the bankruptcy case, including a sale order that provided:

> Notwithstanding section 349 of the Bankruptcy Code, all prior Orders of this Court entered in the Chapter 11 Cases shall remain in full force and effect and shall survive the dismissal of the Chapter 11 Cases, shall continue in full force and effect and the Court retains jurisdiction to enforce the same.

*In re KG Winddown, LLC*, 628 B.R. at 748 (citation omitted). The U.S. Trustee took the position that "the [s]ale [o]rder . . . would survive dismissal" under § 349, *id.*, and the only question was whether an exculpation provision would also survive it. In enforcing the sale order as well as the exculpation provision contained therein, the *Winddown* court reasoned:

15

> [T]he Supreme Court stated in [*Czyzewski v.*] *Jevic* [*Holding Corporation*] that section 349(b) "appears designed to give courts the flexibility to 'make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.'" [580 U.S. 451, 466 (2017)] (quoting H.R. Rep. No. 95-595 at 338). The exculpation of [the creditor] was almost certainly acquired in reliance that the [s]ale [o]rder (including the exculpation) would survive the bankruptcy case, regardless of how the case concluded. Therefore, the exculpation appears to be precisely the kind of right that should be protected through section 349(b), and should not be defeated by an objection that could have been (but was not) brought before the exculpation was originally granted.

*Id.* at 749. The *Winddown* court thus properly recognized that the sale order was not subject to § 349(b), and the exculpation provision was acquired in reliance on the bankruptcy case.

In this case, the Sale Order was not explicit as to whether Paragraph 15 requiring the set-aside of the DFA funds to pay capital gains taxes would remain enforceable even if all other assets of the Debtors were returned and a plan was not confirmed. Although the Sale Order stated that "[t]he Court shall retain jurisdiction over the parties with respect to this Sale Order, including any disputes arising hereunder[,]" (Doc. 2-18 at 13, ¶ 18), it lacks the explicit language at issue in *Winddown*. For that reason, the Bankruptcy Court was correct to seek evidence to discern the parties' intent when they negotiated the terms of the Sale Order. This conclusion is buttressed by the Chittendens' statement in presenting the proposed Sale Order to the Bankruptcy Court that "there's a reticence about proceeding with a plan, with a planned confirmation," (Doc. 10 at 15) (quoting Doc. 2-32 at 9:14-15), notwithstanding the Sale Order which clearly contemplated that outcome.

      **3.    Whether the Bankruptcy Court Abused Its Discretion in Refusing to Clarify, Alter, or Amend the Dismissal Order.**

The Sale Order was negotiated to allow the Debtors to sell real estate to their family members, the Chittendens, and thereby overcome an array of objections from their creditors. The IRS is correct that many provisions of the Sale Order are clear and unambiguous. The court, however, must address the terms of the Sale Order as a whole to determine if an ambiguity lies therein. *See In re Stacey*, 411 A.2d 1359, 1361 (Vt. 1980)

("In construing a contract, the contract provisions must be viewed in their entirety and read together.") (citations omitted).

The Sale Order does not address what would happen if the Debtors sought dismissal of their bankruptcy case after they achieved their desired sale of certain real estate to the Chittendens. The Bankruptcy Court afforded the IRS an opportunity to present evidence of its negotiations with the Debtors. In doing so, the IRS could have established the parties' intent with regard to the set-aside of the DFA funds in the event a plan was not confirmed. The set-aside of the DFA funds was part of the sale process only by virtue of the parties' negotiations. In other words, an order for the sale of property could, but need not, contain this type of provision.

The IRS declined the opportunity to present evidence and relied instead on the plain language of the Sale Order. The problem with this approach was threefold. First, it deprived the Bankruptcy Court of a factual record on which it could find that, even in the absence of a confirmed plan, the parties' intent was that the Debtors retained the obligation to set aside the DFA funds.

Second, because the Sale Order recited the Debtors' "good faith[,]" (Doc. 2-18 at 11, ¶ 7), the IRS failed to establish that the Debtors' subsequent ex parte dismissal was in bad faith. As the Bankruptcy Court noted, the IRS made "no showing of malicious intent or bad faith on behalf of the Debtors[,]" (Doc. 1-2 at 7), even though "[b]ankruptcy courts have exercised jurisdiction after dismissal in instances when doing so is required to right a wrong – meaning evidence of bad faith would be an important consideration." *Id.*

And third, although the Sale Order states that there was adequate consideration, it does not identify any separate consideration for the Debtors' set-aside of the DFA funds. This, in turn, left open the question of whether payment in full of the IRS's secured claim was the only consideration it expected to receive. In its briefs, the IRS cites the Debtors' history of noncompliance with federal tax obligations, but the Sale Order contains no recital to this effect. If all assets were to be returned to the Debtors in the event of dismissal, the Sale Order does not address whether this includes the DFA funds. These

17

issues, and others, could have been addressed in the evidentiary hearing which the IRS declined.

Although the IRS argues the plain language of the Sale Order makes clear that the Debtors had an unconditional obligation to pay the capital gains taxes when due,[10] other promises of the Sale Order were contingent upon the confirmation of a Chapter 12 plan. *See, e.g.*, Doc. 2-18 at 10, ¶ 6-L ("All remaining sale proceeds shall be turned over to the Chapter 12 Trustee to hold pending confirmation of a Chapter 12 plan by the Debtors[.]"). The only ex parte dismissal contemplated by the Sale Order was one filed by an aggrieved party. *See id.* at 12, ¶ 12 ("If either the Debtors and/or the Purchasers fail to make any adequate protection payment as required herein, the Court, upon request of an affected party may *ex parte* enter an Order dismissing the bankruptcy proceeding.").

Under Vermont law, "[t]he question of whether a contract term is ambiguous is a matter of law for the court to decide." *McLaughlin v. Langrock Sperry & Wool, LLP*, 2021 WL 535873, at *10 (D. Vt. Feb. 12, 2021) (quoting *Isbrandtsen v. N. Branch Corp.*, 556 A.2d 81, 83 (Vt. 1988) (internal quotation marks omitted). "Ambiguity exists where the disputed language will allow more than one reasonable interpretation." *Id.* (citation and internal quotation marks omitted).

The interpretation of an ambiguous contract provision "is a question of fact to be determined on all the evidence, including extrinsic evidence, to determine the intent of the contracting parties." *Id.* (quoting *Mueller v. Mueller*, 2012 VT 59, ¶ 20, 192 Vt. 85, 93, 54 A.3d 168, 174) (internal quotation marks omitted). When an ambiguity exists, "'[t]he cardinal principle in the construction of any contract is to give effect to the true intention of the parties.'" *Jenkins v. Miller*, 2023 WL 11829728, at *2 (D. Vt. Aug. 16, 2023) (quoting *In re Cronan*, 563 A.2d 1316, 1317 (Vt. 1989)). As previously noted, to effectuate the intent of the parties, "the contract provisions must be viewed in their entirety and read together." *Id.* (quoting *In re Stacey*, 411 A.2d at 1361) (internal quotation marks omitted).

---

[10] As the Bankruptcy Court observed, this obligation exists independent of the Sale Order.

18

Paragraph 15 of the Sale Order directs Debtors to pay "[a]ny tax obligations due to the United States arising from the sale of the Properties[,]" and "to hold and preserve, and not dissipate or impair in any way, those funds held by [DFA] totaling $325,000[.]" (Doc. 2-18 at 12-13, ¶ 15.) Paragraph 15 of the Sale Order does not condition its enforceability on the filing or confirmation of a Chapter 12 plan. Although the Sale Order appears to contemplate a plan, it does not require one. It does not address whether the obligation to set aside the DFA funds was intended to survive the lack of a confirmed plan followed by a dismissal. As the parties drafted the proposed Sale Order, they had every incentive to address these contingencies. Under Vermont law, a court cannot revise the parties' agreement in the guise of interpretation without first finding the revision reflects the parties' intent. *See Whitney v. Vermont Mut. Ins. Co.*, 2015 VT 140, ¶ 16, 201 Vt. 29, 35, 135 A.3d 272, 277 (internal quotation marks and citation omitted) ("No court may rewrite [] contractual terms to grant one party a better bargain than the one it made.").

During the December 20, 2024 hearing on its Motion to Clarify, the IRS was invited to offer extrinsic evidence to support a conclusion that "it would not have agreed to the sale if not for inclusion of [Paragraph 15 of the Sale Order][.]" (Doc. 1-2 at 7.) Instead, the IRS "fail[ed] to offer any evidence (beyond the language of the Sale Order) to illustrate how it acquired this right." *Id.* at 6. As a result, the Sale Order remains ambiguous and the IRS was provided, but declined, an opportunity to clarify the parties' intent. Against this backdrop, the Bankruptcy Court did not abuse its discretion in refusing to clarify, alter, or amend the Dismissal Order to provide for enforcement of Paragraph 15 of the Sale Order.[11]

---

[11] The IRS argues this result "sets a dangerous precedent within this District concerning the enforceability of court orders and the terms of settlements among parties[]" because "debtors are incentivized to agree to any protective terms requested by creditors in order to obtain whatever desired event (such as a sale) or relief that benefits the debtors, and then use their absolute right to dismiss the case thereafter to avoid compliance with any terms they find undesirable." (Doc. 12 at 11.) This is a valid concern; however, it could have been addressed in the proposed Sale Order. The IRS is not without recourse as it may file suit against the Debtors for breach of contract. The Bankruptcy Court recognized this as well. *See* Doc. 1-2 at 6 ("The IRS is already entitled to payment of the capital gains taxes as a matter of law and has every right to seek relief outside of bankruptcy[.]").

19

## CONCLUSION

For the reasons stated above, the court AFFIRMS IN PART the Bankruptcy Court's January 8, 2025 Order denying the IRS's motion to clarify, alter, or amend. (Doc 1-4.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 29th day of September, 2025.

Christina Reiss, Chief Judge
United States District Court